

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALK:SP
F. #2023R00062

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 16, 2025

<u>By Email and ECF</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  <u>United States v. Donaldson, et al.</u>
      <u>Criminal Docket No. 25-278 (BMC)</u>

Dear Judge Levy:

   The government respectfully submits this letter in support of its request that the Court enter permanent orders of detention against the defendants John Donaldson, Ronald Jackson, and Nicholas Willacy. As set forth below, these defendants pose a danger to the community and a risk of flight. There are no conditions or combinations of conditions sufficient to ensure their return to court and to mitigate the danger they pose to the public. Therefore, they should be detained pending trial. As to defendant Juanita Figueroa, the government respectfully submits that she should be released only with strict conditions and after posting a substantial, heavily secured bond signed by financially responsible sureties with adequate moral suasion over her.[1]

I.   <u>Background</u>

   On September 12, 2025, a grand jury sitting in the Eastern District of New York returned an indictment variously charging Lonney Walker, Marcus Dyce, Ronald Jackson, Nicholas Willacy, John Donaldson, Juanita Figueroa, Coty Harley with violations of Title 18, United States Code, Section 922(g) (possession of a firearm by a prohibited person), 922(a)(1)(A) (firearms trafficking), 371 (conspiracy to traffic firearms in violation of 18 U.S.C.

---

[1]   The defendant Coty Harley is currently incarcerated at the New York State Department of Corrections and Community Supervision's Riverview Correctional Facility serving a sentence for an unrelated conviction. The defendant Marcus Dyce was arrested this morning in the Eastern District of Missouri. The defendant Lonney Walker was arrested in the District of South Carolina. These defendants will appear in this District at a later date.

§ 922(a)(1)(A)) and Title 21, United States Code, Sections 841 and 846 (distribution and possession with intent to distribute narcotics and conspiracy) (the "Indictment").

The Indictment is the result of a three-year investigation by this Office, the Federal Bureau of Investigation and the New York City Police Department into a series of narcotics sales and the interstate trafficking of firearms into the Eastern District of New York, particularly in the Park Hill neighborhood of Staten Island, as well as in the Bronx and New Jersey. The firearms recovered in this investigation include semiautomatic weapons, AR-style rifles, shotguns and pistols of various calibers. Law enforcement also recovered firearms extenders such as a drum magazine capable of holding approximately 100 rounds of ammunition. At least one defendant, Walker, transported the firearms from South Carolina to be sold onto the streets of New York. The guns were predominantly traced to southern states including North Carolina, South Carolina, Kentucky, Texas and Georgia. Several of the defendants also engaged in narcotics trafficking conspiracies, selling crack cocaine into the community in residential areas. To date, as a result of this investigation, law enforcement has recovered over 37 firearms variously from defendants Harley, Walker, Dyce and Donaldson, and over 129 grams of crack cocaine variously from defendants Harley, Figueroa, Jackson and Willacy.

The below is a photograph of the firearms recovered during the investigation to date.



The evidence supporting the charges includes, among other things, the following: (1) audio and video recordings of several of the firearms and narcotics sales; (2) text messages and recordings of phone calls discussing the logistics for several of the firearms and narcotics sales; (3) law enforcement's physical surveillance of these firearms and narcotics transactions; (4) reports from the Bureau of Alcohol, Tobacco, Firearms and Explosives establishing that the

firearms originated from predominantly southern states; and (5) laboratory reports showing that the narcotics recovered from each sale contained cocaine base.

II.     Relevant Offense Conduct[2]

    A.     Dyce's Firearms Trafficking

As alleged in the Indictment, the defendants Marcus Dyce and Lonney Walker engaged in a firearms trafficking conspiracy from approximately July 2022 through May 2025. On August 18, 2022, Dyce sold a pistol for $1,200 in cash at a public strip mall in Staten Island. The Bureau of Alcohol, Tobacco and Firearms (the "ATF") traced the gun to a dealer located in Georgia. As detailed below, Dyce later facilitated additional firearms sales in conjunction with Walker.

    B.     Harley's Firearms and Narcotics Sales

During the investigation, Harley engaged in multiple sales of firearms and narcotics. On October 6, 2022, Harley sold 42.5 grams of cocaine base for $2,750. On October 18, 2022, Harley sold two firearms, including a .22 caliber Mossberg pistol and a .45/.410 Taurus revolver, and 9.6 grams of cocaine base to a single buyer in one transaction for $3,620. On December 29, 2022, Harley sold a Taurus 9 mm caliber pistol and 8.6 grams of cocaine base to a single buyer in the same transaction for $2,750. All three of these sales took place in residential neighborhoods, near houses or apartment buildings, and in the afternoon or early evening hours. As detailed below, Harley later facilitated additional firearms and narcotics sales by introducing the buyer to Figueroa who, in turn, connected the buyer with Willacy and Jackson.

    C.     Walker's Firearms Trafficking

As noted above, in October 2022, Dyce connected Walker with a purchaser of firearms. From November 2022 through August 2025, Walker was responsible for selling 33 guns to that buyer on eight different dates. Walker sold an array of guns to the buyer, including pistols of various calibers, AR-style rifles, shotguns, semiautomatic firearms, and extended magazines. Walker sold these firearms in the Bronx, Staten Island, and in New Jersey, including in the vicinity of apartment buildings. Several of these buys also occurred during daylight hours. Walker typically suggested price ranges of $1,000 through $1,200 for each firearm. The ATF determined that these guns predominantly came from southern states.

Additionally, Walker connected Donaldson with the buyer for additional firearms sales. On May 19, 2025, Donaldson sold the buyer a .22 caliber Mossberg pistol for $1,500.

---

[2] The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial. The government is entitled to proceed by proffer in a detention hearing. United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

The ATF determined that the gun originated from a dealer in South Carolina. On May 28, 2025, Walker and Donaldson together, in one transaction, sold seven guns to the buyer, which included two AR-style rifles, for $8,500.

      D.      <u>Harley, Figueroa, Jackson and Willacy's Narcotics Sales</u>

As explained above, in October 2022, Harley participated in the sale of two firearms and over 50 grams of cocaine base.

On April 2, 2024, Harley began serving his six-year sentence for his March 2024 conviction for criminal sale of a controlled substance in the second degree in violation of New York Penal Laws. While Harley was in prison, Figueroa helped Harley continue to facilitate his sales of cocaine base by connecting buyers to narcotics sellers. After accepting the money from one such individual, Figueroa provided the phone numbers for Jackson and Willacy as sources of narcotics.

On June 18, 2025, after Figueroa connected him to the buyer, Jackson sold approximately 25.079 grams of crack cocaine for $1,170. Less than a month later, on July 8, 2025, Jackson sold an additional 25.6 grams of cocaine base in exchange for $1,170. Both of these buys took place near apartment buildings during daylight hours.

On August 7, 2025, Willacy, also after Figueroa connected him to the buyer, sold approximately 18.02 grams of crack cocaine for $600. Willacy also conducted this buy in a residential neighborhood during daylight hours.

Finally, during the arrest of Jackson earlier this morning, law enforcement discovered a firearm and apparent narcotics and narcotics paraphernalia, including scales and

baggies used for the distribution of narcotics, in his residence. A photograph of the narcotics and paraphernalia is below.



E. <u>Summary of the Counts Against Each Defendant</u>

As noted, on September 12, 2025, a grand jury in this District returned the Indictment, which charges the defendants with various crimes stemming from the above-detailed offense conduct. The chart below sets forth the crimes charged against each defendant:

| **Defendant** | **Charges** |
|---|---|
| John Donaldson | • Conspiracy to traffic firearms in violation of 18 U.S.C. § 371, 922(a)(1)(A), 924(a)(1)(D) (Count 13)<br><br>• Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 14) |
| Marcus Dyce | • Conspiracy to traffic firearms in violation of 18 U.S.C. § 371, 922(a)(1)(A), 924(a)(1)(D) (Count 1)<br><br>• Sale of firearm to prohibited person in violation of 18 U.S.C. §§ 932(a), 922(d)(10), 924(a)(8) (Count 2)<br><br>• Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 8) |

| Defendant | Charges |
|---|---|
| Juanita Figueroa | • Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Counts 16 and 17)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Counts 18 and 19) |
| Coty Harley | • Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 3)<br><br>• Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(iii) (Count 4)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Counts 5, 6, 9, 18, and 19)<br><br>• Felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (Counts 7 and 10)<br><br>• Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Counts 16 and 17) |
| Ronald Jackson | • Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Count 16)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Counts 18 and 19) |
| Lonney Walker | • Conspiracy to traffic firearms in violation of 18 U.S.C. § 371, 922(a)(1)(A), 924(a)(1)(D) (Counts 1, 13)<br><br>• Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Counts 8 and 14)<br><br>• Felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (Counts 11, 12, 15, 20, 21, and 23) |

| Defendant | Charges |
|---|---|
| Nicholas Willacy | • Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Count 17)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Count 22) |

III.    <u>Legal Standard</u>

In deciding whether to release or detain a defendant, a court "must undertake a two-step inquiry." <u>United States v. Friedman</u>, 837 F.2d 48, 49 (2d Cir. 1988). "It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1)," which includes a "crime of violence," or that the defendant presents a risk of flight or obstruction of justice" under Section 3142(f)(2). <u>Id.</u> "Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." <u>Id.</u>

If the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order" a defendant detained. 18 U.S.C. § 3142(e)(1). The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a . . . firearm"; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release. <u>See</u> 18 U.S.C. § 3142(g). Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" <u>United States v. Millan</u>, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

IV.    <u>Detention is Warranted as to Defendants Donaldson, Jackson and Willacy</u>

The Court should enter a permanent order of detention as to defendants Donaldson, Jackson and Willacy. Donaldson participated in significant trafficking of firearms onto the streets of New York. Indeed, Donaldson sold eight guns in New York in less than one

7

month.  For their part, Jackson and Willacy combined sold more than 68 grams of crack cocaine in Staten Island in the span of approximately one and a half months.  All three defendants willingly engaged in criminal conduct that endangered the community.  If law enforcement had not recovered the firearms Donaldson sold, those firearms would likely be in the hands of violent individuals who would use them to harm members of the public.  Similarly, the narcotics Jackson and Willacy sold would have ended up in the community.  All three defendants displayed a flagrant and callous disregard for the public and the law with their actions.

For the reasons described above and in further detail below, the defendants pose a significant danger to the community and are a flight risk if released pending trial.  No combination of bail conditions will ensure the safety of the community and the defendants' appearances before the court.  Thus, a permanent order of detention should be entered as to each defendant.

> A.     The Nature and Circumstances of the Charged Offenses

The seriousness of the danger posed by the defendants' release should not be underestimated given the nature and circumstances of the charged offenses.

As detailed extensively above, the nature and circumstances of the charged offenses—which include firearms trafficking, conspiracy to traffic firearms, conspiracy to distribute and possess with intent to distribute cocaine base, and distribution and possession with intent to distribute cocaine base—are indisputably serious.  Over a short period of time, Donaldson engaged in selling a significant number of firearms including AR-style rifles.  Similarly, Jackson and Willacy sold a large quantity of crack cocaine, with Jackson selling approximately 25.07 grams in the first sale and approximately 25.68 grams in his second sale, both in less than one month.  More disturbingly, each of these defendants conducted their illicit and dangerous conduct in public and in broad daylight.  These buys took place during the day, when other members of the public were also on sidewalks or streets, carrying out daily activities.  Some of these buys also took place in residential areas, locations where the public has a right to feel and to be safe.  Given their demonstrated willingness and brazenness in selling dangerous narcotics or weapons out in the public, there is a substantial risk that, if allowed to remain at liberty, the defendants would continue to engage in these unlawful activities.

Courts regularly order detention in cases involving gun trafficking or possession.  See United States v. McCann et al., No. 23-CR-08 (WFK), ECF Nos. 13, 17 (E.D.N.Y. January 11, 2023) (ordering detention of two defendants involved in a firearms trafficking conspiracy); United States v. Clarke, No. 22-CR-341 (LDH), ECF Nos. 4, 13, 14 (E.D.N.Y. June 28, 2022) (ordering detention of defendants involved in a firearms trafficking conspiracy); United States v. Smalls, No. 20-CR-126, 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (affirming a magistrate judge's order of detention that was based, in part, on "the general danger to the community posed by [the defendant's] apparently ready access to firearms"); United States v. Williams, No. 20-CR-293-2, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020) ("[T]he danger of Defendant's release is demonstrated through the fact [that] Defendant's instant and past offense involved the use of a firearm."); United States v. Thompson, 436 F. Supp. 3d 631, 636 (W.D.N.Y. 2020) (ordering detention against defendant responsible for firearms and narcotics trafficking offenses); United States v. Gumora, 454 F. Supp. 3d 280, 291 (S.D.N.Y. 2020)

(defendant charged with being a felon-in-possession and possession of narcotics held without bond on dangerousness grounds, despite his contention that his asthma put him at "increased risk of getting severely ill or dying" from COVID-19 while incarcerated); United States v. Harris, No. 19-CR-300, 2020 WL 4014901, at *7 (S.D.N.Y. July 16, 2020) ("Defendant's arrest for being a felon in possession itself raises the specter of danger to the community."); United States v. Nikolow, 534 F. Supp. 2d 37, 39 (D.D.C. 2008) ("While the charges against the defendant do not involve violent acts, the defendant's illegal possession of 15 firearms in his store and his residence renders him a danger to the community.").

> B.   The Defendants' Histories and Characteristics

The defendants' histories and characteristics also weigh in favor of detention.

Donaldson was arrested on May 21, 2025 by the NYPD and charged with criminal possession of a weapon in the fourth degree for possessing brass knuckles and operating a motor vehicle without a license. Although criminal possession of a weapon in the fourth degree is a misdemeanor and the matter was adjourned in contemplation of dismissal, the nature of this charge is consistent with Donaldson's ready access to and willingness to deal with weapons.

Jackson has a significant criminal history, including violent felonies and a prior narcotics offense, that illustrates that he is a danger to the community. Jackson's criminal history includes a total of nine convictions, five of which are felonies. Of those five felonies, two are violent felonies. Most recently, Jackson was convicted on October 10, 2019 of attempted assault in the second degree for injuring a person while confined in a correctional facility. Jackson was sentenced to an indeterminate sentence of 18 months to three years' imprisonment for this conviction. On October 24, 2016, Jackson was convicted of another violent felony: assault in the second degree with intent to injure an officer, fireman, EMT, nurse or crossing guard. For this conviction, Jackson was sentenced to seven years' imprisonment and five years' post-release supervision. Additionally, Jackson was previously convicted on November 29, 2012 of attempted criminal sale of a controlled substance in the third degree, a felony under New York State Penal Laws. Jackson was sentenced to five years' imprisonment and 18 months' post-release supervision for this offense. On November 28, 2014, Jackson was found guilty of violating his parole and re-paroled. Despite the significant terms of incarceration that Jackson has been sentenced to previously, Jackson was not deterred from committing the narcotics crimes charged in the Indictment. Additionally, his history of assaulting another individual while in a correctional facility, assaulting an officer or other uniformed personnel, and violation of parole demonstrate that he cannot and will not abide by lawful conditions and orders that the Court would set if he were to be released on bond. Jackson's criminal history, in conjunction with the charges Jackson is facing, establish that Jackson should be detained.

Willacy also has a significant criminal history showing that he poses a danger to the community. Willacy's criminal history includes six convictions, five of which are felonies. Most recently, on February 22, 2022, Willacy was convicted of criminal possession of a weapon in the third degree, for which he was sentenced to an indeterminate term of three to six years' imprisonment. Willacy is currently on parole for that conviction and committed the charged offenses while on parole, demonstrating that he does not respect his terms of probation.

Additionally, Willacy was previously convicted of criminal possession of a controlled substance in the fifth degree on October 7, 2013, a felony under New York State Penal Laws, for which he was sentenced to four years' imprisonment and two years' post-release supervision. On September 27, 2006, Willacy was also convicted of bail jumping in the second degree, a felony under New York State Penal Laws. This bail jumping conviction underscores that Willacy cannot be trusted to return to Court voluntarily, let alone abide by any condition or combination of conditions of release. Willacy also was convicted on September 27, 2006 of two counts of attempted murder, for which he was sentenced to two concurrent terms of seven years' imprisonment. While on parole for this conviction, on November 12, 2013, Willacy's parole was revoked as a result of a parole violation. Willacy's criminal history demonstrates several grounds for detention: (1) prior terms of incarceration that have not deterred him from continuing to engage in criminal activity; (2) a disregard for returning to court and abiding by conditions of release imposed by the court; and (3) a prior conviction for narcotics possession that also has not deterred him from engaging in the same criminal conduct again.

        C.      The Strong Evidence of the Defendants' Guilt Provides an Incentive to Flee

As discussed above, the evidence of the defendants' guilt is exceedingly strong. The government intends to prove the defendants' guilt at trial through, among other things, consensual audio and video recordings; testimony of multiple witnesses; and physical and documentary evidence. Relatedly, the weight of the evidence also heightens the incentive to flee. The evidence of the defendants' involvement in the alleged conduct is overwhelming. Each of Donaldson's, Jackson's and Willacy's sales were video recorded. The video recordings are of clear quality that indisputably depicts each of their faces. The evidence of their criminal conduct also includes text and telephone records showing communications among the co-conspirators and with the Buyer prior to and/or around the times of the buys, and law enforcement surveillance and documentation of these buys. Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

V.      A Substantial Bail Package is Necessary as to Figueroa

Figueroa does not have a criminal history, but her conduct in the narcotics conspiracy was critical and shows that a strong bail package and stringent conditions are necessary. As explained in greater detail above, Figueroa was an integral and willing participant in the sales of narcotics charged in the Indictment. What is more, the investigation has indicated that Figueroa had multiple sources for narcotics transactions and did not engage in the charged conduct in a vacuum. Individuals such as Figueroa pose serious threats to public safety by carrying out orders or acting on behalf of incarcerated defendants as their proxies so that incarcerated individuals can continue committing crimes and harm the public. Based on Figueroa's willingness to engage in a narcotics conspiracy and to further Harley's criminal activity, a strong and substantial bail package secured by financial sureties with sufficient moral suasion is necessary to protect the public and ensure her return to court.

VI.     Conclusion

        For the foregoing reasons, the government respectfully requests that the Court enter permanent orders of detention as to defendants John Donaldson, Ronald Jackson and Nicholas Willacy. The government further submits that the defendant Juanita Figueroa should not be released unless and until she posts a substantial secured bond, signed by financially responsible sureties with adequate moral suasion over her.  Further, any such release should be under strict conditions of supervision.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:        /s/
Stephanie Pak
Assistant U.S. Attorney
(718) 254-6064

cc:  Defense Counsel (by email and ECF)
     Clerk of Court (RML) (by email)