

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TH:SP
F. #2023R00062

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 9, 2025

<u>By Email and ECF</u>

The Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Donaldson, et al.
           <u>Criminal Docket No. 25-278 (BMC)</u>

Dear Judge Henry:

The government respectfully submits this letter in support of its request that the Court enter permanent orders of detention against the defendants Marcus Dyce and Lonney Walker. As set forth below, these defendants pose a danger to the community and a risk of flight. There are no conditions or combinations of conditions sufficient to ensure their return to court and to mitigate the danger they pose to the public. Therefore, they should be detained pending trial.[1]

I.    <u>Background</u>

On September 12, 2025, a grand jury sitting in the Eastern District of New York returned an indictment variously charging Lonney Walker, Marcus Dyce, Ronald Jackson, Nicholas Willacy, John Donaldson, Juanita Figueroa, Coty Harley with violations of Title 18, United States Code, Section 922(g) (possession of a firearm by a prohibited person), 922(a)(1)(A) (firearms trafficking), 371 (conspiracy to traffic firearms in violation of 18 U.S.C. § 922(a)(1)(A)) and Title 21, United States Code, Sections 841 and 846 (distribution and possession with intent to distribute narcotics and conspiracy) (the "Indictment").

The Indictment is the result of a three-year investigation by this Office, the Federal Bureau of Investigation and the New York City Police Department into a series of

---

[1]    The defendant Coty Harley, also to be arraigned before Your Honor today, is currently incarcerated at the New York State Department of Corrections and Community Supervision's Ulster County Correctional Facility. Harley is serving a sentence for an unrelated conviction with an earliest projected release date of April 26, 2029.

narcotics sales and the interstate trafficking of firearms into the Eastern District of New York, particularly in the Park Hill neighborhood of Staten Island, as well as in the Bronx and New Jersey. The firearms recovered in this investigation include semiautomatic weapons, AR-style rifles, shotguns and pistols of various calibers. Law enforcement also recovered firearms extenders such as a drum magazine capable of holding approximately 100 rounds of ammunition. At least one defendant, Walker, transported the firearms from South Carolina to be sold onto the streets of New York. The guns were predominantly traced to southern states including North Carolina, South Carolina, Kentucky, Texas and Georgia. Several of the defendants also engaged in narcotics trafficking conspiracies, selling crack cocaine into the community in residential areas. To date, as a result of this investigation, law enforcement has recovered over 37 firearms variously from defendants Harley, Walker, Dyce and Donaldson, and over 129 grams of crack cocaine variously from defendants Harley, Figueroa, Jackson and Willacy.

The below is a photograph of the firearms recovered during the investigation to date.



The evidence supporting the charges includes, among other things, the following: (1) audio and video recordings of several of the firearms and narcotics sales; (2) text messages and recordings of phone calls discussing the logistics for several of the firearms and narcotics sales; (3) law enforcement's physical surveillance of these firearms and narcotics transactions; (4) reports from the Bureau of Alcohol, Tobacco, Firearms and Explosives establishing that the firearms originated from predominantly southern states; and (5) laboratory reports showing that the narcotics recovered from each sale contained cocaine base.

On September 16, 2025, Dyce was arrested at his residence in the Eastern District of Missouri. The same day, Walker was arrested at his residence in the District of South

Carolina.  Both defendants waived identity hearings and detention hearings until their arrival in this District.  <u>See</u> ECF Nos. 11 and 12.  On or about October 8, 2025, Dyce and Walker arrived in the Eastern District of New York.

II.      <u>Relevant Offense Conduct</u>[2]

A.      <u>Dyce's Firearms Trafficking</u>

As alleged in the Indictment, the defendants Marcus Dyce and Lonney Walker engaged in a firearms trafficking conspiracy from approximately July 2022 through May 2025. On August 18, 2022, Dyce sold a pistol for $1,200 in cash at a public strip mall in Staten Island. The Bureau of Alcohol, Tobacco and Firearms (the "ATF") traced the gun to a dealer located in Georgia.  As detailed below, Dyce also arranged additional firearms sales in conjunction with Walker.

B.      <u>Harley's Firearms and Narcotics Sales</u>

During the course of the investigation, Harley engaged in multiple sales of firearms and narcotics.  On October 6, 2022, Harley sold 42.5 grams of cocaine base for $2,750. On October 18, 2022, Harley sold two firearms, including a .22 caliber Mossberg pistol and a .45/.410 Taurus revolver, and 9.6 grams of cocaine base to a single buyer in one transaction for $3,620.  On December 29, 2022, Harley sold a Taurus 9 mm caliber pistol and 8.6 grams of cocaine base to a single buyer in the same transaction for $2,750.  All three of these sales took place in residential neighborhoods, near houses or apartment buildings, and in the afternoon or early evening hours.  Harley later facilitated additional firearms and narcotics sales by introducing the buyer to defendant Figueroa who, in turn, connected the buyer with defendants Willacy and Jackson.

C.      <u>Walker's Firearms Trafficking</u>

As noted above, in October 2022, Dyce connected Walker with a purchaser of firearms.  From November 2022 through August 2025, Walker was responsible for selling 33 guns to that buyer on eight different dates.  Walker sold an array of guns to the buyer, including pistols of various calibers, AR-style rifles, shotguns, semiautomatic firearms, and extended magazines.  Walker sold these firearms in the Bronx, Staten Island, and in New Jersey, including in the vicinity of apartment buildings.  Several of these buys also occurred during daylight hours.

---

[2]      The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.  The government is entitled to proceed by proffer in a detention hearing. <u>United States v. Abuhamra</u>, 389 F.3d 309, 320 n.7 (2d Cir. 2004); <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000).

Walker typically suggested price ranges of $1,000 through $1,200 for each firearm. The ATF determined that these guns predominantly came from southern states.

Additionally, Walker connected Donaldson with the buyer for additional firearms sales. On May 19, 2025, Donaldson sold the buyer a .22 caliber Mossberg pistol for $1,500. The ATF determined that the gun originated from a dealer in South Carolina. On May 28, 2025, Walker and Donaldson together, in one transaction, sold seven guns to the buyer, which included two AR-style rifles, for $8,500.

D.     Summary of the Counts Against Each Defendant

As noted, on September 12, 2025, a grand jury in this District returned the Indictment, which charges the defendants with various crimes stemming from the above-detailed offense conduct. The chart below sets forth the crimes charged against each defendant:

| Defendant | Charges |
|---|---|
| John Donaldson | • Conspiracy to traffic firearms in violation of 18 U.S.C. § 371, 922(a)(1)(A), 924(a)(1)(D) (Count 13)<br><br>• Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 14) |
| Marcus Dyce | • Conspiracy to traffic firearms in violation of 18 U.S.C. § 371, 922(a)(1)(A), 924(a)(1)(D) (Count 1)<br><br>• Sale of firearm to prohibited person in violation of 18 U.S.C. §§ 932(a), 922(d)(10), 924(a)(8) (Count 2)<br><br>• Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 8) |
| Juanita Figueroa | • Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Counts 16 and 17)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Counts 18 and 19) |

| Defendant | Charges |
|---|---|
| Coty Harley | • Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count 3)<br><br>• Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(iii) (Count 4)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Counts 5, 6, 9, 18, and 19)<br><br>• Felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (Counts 7 and 10)<br><br>• Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Counts 16 and 17) |
| Ronald Jackson | • Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Count 16)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Counts 18 and 19) |
| Lonney Walker | • Conspiracy to traffic firearms in violation of 18 U.S.C. § 371, 922(a)(1)(A), 924(a)(1)(D) (Counts 1, 13)<br><br>• Firearms trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Counts 8 and 14)<br><br>• Felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (Counts 11, 12, 15, 20, 21, and 23) |
| Nicholas Willacy | • Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) (Count 17)<br><br>• Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Count 22) |

III.     Legal Standard

        In deciding whether to release or detain a defendant, a court "must undertake a two-step inquiry." United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). "It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1)," which includes a "crime of violence," or that the defendant presents a risk of flight or obstruction of justice" under Section 3142(f)(2). Id. "Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." Id.

        If the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order" a defendant detained. 18 U.S.C. § 3142(e)(1). The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

        Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a . . . firearm"; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

IV.     Detention is Warranted as to Defendants Dyce and Walker

        The Court should enter a permanent order of detention as to defendants Dyce and Walker. Dyce was an integral part of the gun trafficking conspiracy by connecting the buyer with Walker, who is a felon and prolific unlawful seller of firearms. Both defendants displayed a flagrant and callous disregard for the public and the law with their actions.

        For the reasons described above and in further detail below, the defendants pose a significant danger to the community and are a flight risk if released pending trial. No combination of bail conditions will ensure the safety of the community and the defendants' appearances before the court. Thus, a permanent order of detention should be entered as to each defendant.

        A.     The Nature and Circumstances of the Charged Offenses

        The large-scale trafficking of illegal firearms into New York City is an extraordinarily serious offense.   As the Second Circuit observed in affirming a district court's

significant sentence for a firearms-trafficking offense, a "significant number of New Yorkers, many of them children . . . are regularly injured by random gunfire." United States v. Cavera, 550 F.3d 180, 207-08 (2d Cir. 2008) (Raggi, J., concurrence). In particular, Dyce sold a firearm to the buyer in August 2022 in a public parking lot during daytime hours in Staten Island. This was not a one-time or aberrant occurrence. Dyce continued to engage in firearms trafficking by introducing Walker to the buyer. As a result of Dyce connecting Walker to the buyer, over a significant period of time, from July 2022 through May 2025, Walker engaged in selling 33 firearms, including AR-style rifles.

       Walker, like Dyce, also conducted his illicit and dangerous conduct in public and in broad daylight. All but one of the gun buys took place during the day, when other members of the public were also on sidewalks or streets, carrying out daily activities. Some of these buys also took place in residential areas. Given Walker's demonstrated willingness and brazenness in selling dangerous weapons out in the public, there is a substantial risk that, if allowed to remain at liberty, Walker would continue to commit crimes.

       Courts regularly order detention in cases involving gun trafficking or possession. See United States v. McCann et al., No. 23-CR-08 (WFK), ECF Nos. 13, 17 (E.D.N.Y. January 11, 2023) (ordering detention of two defendants involved in a firearms trafficking conspiracy); United States v. Clarke, No. 22-CR-341 (LDH), ECF Nos. 4, 13, 14 (E.D.N.Y. June 28, 2022) (ordering detention of defendants involved in a firearms trafficking conspiracy); United States v. Smalls, No. 20-CR-126, 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (affirming a magistrate judge's order of detention that was based, in part, on "the general danger to the community posed by [the defendant's] apparently ready access to firearms"); United States v. Williams, No. 20-CR-293-2, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020) ("[T]he danger of Defendant's release is demonstrated through the fact [that] Defendant's instant and past offense involved the use of a firearm."); United States v. Thompson, 436 F. Supp. 3d 631, 636 (W.D.N.Y. 2020) (ordering detention against defendant responsible for firearms and narcotics trafficking offenses); United States v. Gumora, 454 F. Supp. 3d 280, 291 (S.D.N.Y. 2020) (defendant charged with being a felon-in-possession and possession of narcotics held without bond on dangerousness grounds, despite his contention that his asthma put him at "increased risk of getting severely ill or dying" from COVID-19 while incarcerated); United States v. Harris, No. 19-CR-300, 2020 WL 4014901, at *7 (S.D.N.Y. July 16, 2020) ("Defendant's arrest for being a felon in possession itself raises the specter of danger to the community."); United States v. Nikolow, 534 F. Supp. 2d 37, 39 (D.D.C. 2008) ("While the charges against the defendant do not involve violent acts, the defendant's illegal possession of 15 firearms in his store and his residence renders him a danger to the community.").

    B.    Walker's Criminal History Further Calls for Detention

       Walker's criminal history also weighs in favor of detention. Walker has an extensive criminal history, including seven convictions, three of which are felonies. Most recently, Walker was convicted in Bronx County on July 22, 2015 after a jury trial, of a misdemeanor in violation of New York State Penal Laws of acting in a manner injurious to a child less than 17 years old. Additionally, Walker was convicted on January 25, 2010 of obstructing governmental administration, a misdemeanor, in Richmond County. Furthermore, in 1999 and 2003, Walker was convicted in three cases for attempted criminal sale of a controlled

substance in the third degree, a felony in violation of New York State Penal Laws. In connection with one of these convictions, Walker was sentenced to a three-to-six-year indeterminate term of imprisonment. Despite the significant term of incarceration that Walker has been sentenced to previously, Walker was not deterred from engaging in not only illegal, but similar conduct yet again. Whereas Walker was convicted for previously attempting to sell narcotics, the Indictment charges him now with selling firearms. In both instances, Walker chose to engage in illicitly selling dangerous contraband that could seriously harm the public. Therefore, Walker's criminal history, in conjunction with the charges Walker is facing, establish that Walker should be detained.

      C.    <u>The Strong Evidence of the Defendants' Guilt Provides an Incentive to Flee</u>

      As discussed above, the evidence of the defendants' guilt is exceedingly strong. The government intends to prove the defendants' guilt at trial through, among other things, consensual audio and video recordings; testimony of multiple witnesses; and physical and documentary evidence. Relatedly, the weight of the evidence also heightens the incentive to flee. The evidence of the defendants' involvement in the alleged conduct is overwhelming. Each of Walker's sales were video recorded and Dyce's sale was audio recorded. The video recordings are of clear quality that indisputably depicts Walker's face. The evidence of their criminal conduct also includes text and telephone records showing communications among the co-conspirators and with the buyer prior to and/or around the times of the buys, and law enforcement surveillance and documentation of these buys. Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." <u>Millan</u>, 4 F.3d at 1046; <u>see</u> <u>also</u> <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 18 (1st Cir. 1987) (<u>per</u> <u>curiam</u>) (where "the evidence against defendants is strong, the incentive for relocation is increased").

V.    <u>Conclusion</u>

      For the foregoing reasons, the government respectfully requests that the Court enter permanent orders of detention as to defendants Marcus Dyce and Lonney Walker.

      Respectfully submitted,

      JOSEPH NOCELLA, JR.
      United States Attorney

By:          /s/
        Stephanie Pak
        Assistant U.S. Attorney
        (718) 254-6064

cc:    Defense Counsel (by email and ECF)
       Clerk of Court (MMH) (by email)